```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
MCGM, GmbH,

                        Plaintiff,                 22-cv-5851 (PKC)

        -against-                                  OPINION AND ORDER

OPTA GROUP LLC, JEFF STONE, OLIVER
MAIER, OPTA MINERALS, INC., and
SPEYSIDE EQUITY 1 LP,

                        Defendants.
-----------------------------------------------------------x
```

CASTEL, U.S.D.J.

        Plaintiff MCGM, GmbH ("MCGM") moves for reconsideration of the Court's Opinion and Order dated March 21, 2024, which granted defendants' motion to dismiss the Fourth Amended Complaint (the "Complaint"). MCGM, GmbH v. OPTA Grp. LLC, 2024 WL 1250629 (S.D.N.Y. Mar. 21, 2024) (the "Opinion"). Familiarity with the Opinion is assumed.

        As discussed in the Opinion, much of the Complaint describes acts of purported corporate mismanagement by Kay Michel, a former CEO of SKW Stahl-Metallurgie Holding AG ("SKW"), a German public company that is not a party to this action. Although Michel was named as a defendant, the Complaint acknowledges that he is "beyond the jurisdiction of this federal court," and MCGM later conceded that service of process was never attempted upon him. (See ECF 51, 106.)

        As detailed in the Opinion, the allegations concerning defendants OPTA Group LLC, Jeff Stone, Oliver Maier, OPTA Minerals Inc. and Speyside Equity 1 LP were thin and conclusory, sometimes offering little more than descriptions of their existence. MCGM's motion

for reconsideration sets forth no bases to depart from the reasoning of the Opinion and therefore will be denied.

BACKGROUND.

This action was originally filed in the Supreme Court of the State of New York, New York County, and removed pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). (ECF 1.) The Complaint was the fifth iteration of MCGM's pleading and was filed after pre-motion practice. (ECF 51.) It describes purported mismanagement and malfeasance by Michel, who allegedly failed to obtain suitable refinancing for a EUR 74 million loan to SKW, and ultimately transferred the loan in a "debt-to-equity swap" to a private-equity firm allegedly owned and controlled by Michel's personal friend, Kevin Daugherty. (See id.) As described in the Complaint, the transaction had the effect of "squeezing" existing shareholders, including MCGM, out of their ownership of SKW. (See id.)

The Complaint named eleven defendants, plus John and Jane Doe defendants 1-99. (See id.) Service of process was effectuated upon only five defendants: OPTA Group, LLC, Jeff Stone, Oliver Maier, OPTA Minerals, Inc. and Speyside Equity 1 LP. Those five defendants moved to dismiss the Complaint pursuant to Rule 12(b)(6), and the Opinion granted that motion.

In a separate Order of April 29, 2024, the Court dismissed MCGM's claims against the six additional defendants pursuant to Rule 4(m), Fed. R. Civ. P., concluding that they had not been timely served and that MCGM had not shown good cause for its failure to do so. (ECF 116.) MCGM does not move for reconsideration of that Order.

LEGAL STANDARD.

Motions for reconsideration are governed by Local Civil Rule 6.3 and Rule 60(b), Fed. R. Civ. P. A motion for reconsideration may be granted based upon "an intervening change

of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Virgin Atlantic Airways, Ltd. v. National Mediation Board, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks and citation omitted). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." Id.

Defendants urge that the motion should be denied as untimely because, after MCGM successfully applied for an extension, it filed the motion two days after the Court-ordered deadline. Defendants do not assert that they were prejudiced by MCGM's untimely filing, and the Court will consider the merits of MCGM's motion.

THE MOTION FOR RECONSIDERATION WILL BE DENIED.

        A. MCGM Does Not Identify Any Error in the Court's Application of the Plausibility Standard of Rule 12(b)(6).

MCGM first urges that its claims were "plausible from the start," citing to paragraphs of the Complaint that describe certain corporate-disclosure obligations under German law of non-party SKW. (Pl. Mem. at 3-4 (ECF 110).) But MCGM does not point to any allegations regarding the defendants' roles in SKW's claimed failures to adhere to German disclosure laws. It broadly references a "conspiracy" with the goal of "corrupting" Michel. (Id.) MCGM points to no allegations about any individual defendant's participation in such a conspiracy or explain how the Court misapplied the well-understood plausibility standard for adjudicating a Rule 12(b)(6) motion. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("The

plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.").

MCGM has not identified any oversight or legal error in the Court's application of the plausibility standard, and its motion for reconsideration will be denied.

### B. A German Appellate Court Dismissed Shareholder Objections to the Plan of Insolvency.

Count Four of the Complaint asserts a conversion claim against OPTA Group LLC. In dismissing the claim, the Opinion cited the Complaint's allegation that a Speyside entity acquired SKW shares "[a]s a result of the insolvency plan" adopted by the Insolvency Division of the District Court of Munich, Germany (the "Insolvency Division"). MCGM, 2024 WL 1250629, at *9 (quoting Compl't ¶ 24). The Opinion excerpted portions of the Insolvency Division's written decision as submitted in certified English translation, including its conclusions that "no payments to the shareholders are possible" and that SKW's then-existing shares were "economically worthless." Id. at *2 (quoting ECF 65-1). Applying New York law, the Opinion concluded that, based upon the Complaint's allegations and the Insolvency Division's written decision, OPTA Group LLC was "privileged" against MCGM's conversion claim because any transfer of shares to a Speyside entity occurred pursuant to a court order. Id. at *9 (collecting cases).

Much of MCGM motion for reconsideration argues that the decision of the Insolvency Division was later reversed, and that Michel and a Speyside entity schemed to drive SKW to insolvency. (Pl. Mem. at 4-5.) This argument is expressly and fully contradicted by the text of the decision issued by the reviewing court of the Regional Court of Munich I – 14th Civil Division dated November 28, 2018 (the "Regional Court"). (ECF 65-2.) It also is inconsistent with MCGM's briefing in opposition to the motion to dismiss.

First, MCGM's memorandum in opposition to the motion to dismiss asserted "that the German court's decisions 'cannot be appealed plus court [sic] did not allow the shareholders would [sic] defend themselves where its decision are and cannot be appealed.'" 2024 WL 1250629, at *9 (quoting Pl. Opp. Mem. at 29). While the verbiage is garbled, MCGM argued to this Court that the Insolvency Division's decision should not be given weight because SKW shareholders were unable to appeal it.

Second, MCGM now argues that "[b]ecause the [Insolvency Division] decision was reversed, the findings cannot be used to dismiss the Complaint." (Pl. Mem. at 4.) In fact, the Regional Court upheld the insolvency plan and dismissed an appeal by shareholders, including MCGM.

Because the Regional Court did not disturb the insolvency plan adopted by the Insolvency Division and its rulings were not disputed on the motion to dismiss, the Opinion did not discuss or summarize the Regional Court's decision. After the Insolvency Division issued its opinion on August 14, 2018, 154 petitioners, including MCGM, appealed the plan of insolvency. (See ECF 65-2 at 3.) Although the finer points of German procedure are not evident from the parties' submissions, an intermediate ruling thereafter issued by a "single justice of the chamber" in the form of a "proof decision" directed the appointment of a court-appointed expert to further review the plan of insolvency. (Id. at 3.)

That intermediate ruling was then reversed in a 12-page, single-spaced written decision issued by a three-justice panel of the Regional Court. (ECF 65-2.) The Regional Court upheld the insolvency plan and "rejected" the arguments of the petitioning shareholders. (See id.) The Regional Court stated that petitioners had not met their burden to identify "a serious violation of law," that two independent experts had already concluded that there was zero value

to SKW shares, that the "urgency" of "accelerated" proceedings precluded additional review by a court-appointed expert, and that various procedural objections raised by the petitioners did not warrant relief. (Id. at 7-10.) The Regional Court emphasized that the need to "promptly" effectuate the insolvency plan outweighed the benefits of a further review by a court-appointed expert and the attendant delays, pointing to the interests of SKW's creditors and employees. (Id. at 11-13.)

MCGM's assertion that an appellate tribunal reversed the plan of insolvency is contradicted by the text of the Regional Court opinion and does not provide a basis to reconsider the Opinion.

### C. MCGM's Other Asserted Grounds for Reconsideration Are Conclusory and Unsupported by the Text of the Complaint.

MCGM raises additional arguments in support of its motion for reconsideration, none of which merit relief.

Count One asserted a claim of "fraud against co-conspirators." (Compl't ¶¶ 124-33.) MCGM urges that it plausibly alleged that defendants acted as co-conspirators to Michel in some capacity. (Pl. Mem. at 6-7.) The allegations that it cites in support are overbroad and conclusory. (See, e.g., Compl't ¶ 43 ("Various companies, partnerships, and individuals made and not made defendants in this case participated as co-conspirators in the offenses alleged herein and performed acts and made statements in furtherance of a conspiracy.").) This vague allegation does not satisfy the notice pleading required by Rule 8.

Also as to Count One, MCGM argues that it plausibly alleged fraudulent conduct based on the failure of Michel and SKW to satisfy German disclosure laws. But the Opinion assumed arguendo that the Complaint adequately alleged fraudulent conduct by Michel and

concluded that it did not plausibly allege that any defendant entered into an agreement with Michel to fraudulently evade Germany's disclosure laws. 2024 WL 1250629, at *5.

Count Two asserted promissory estoppel "against Speyside controlled company."[1] The Opinion dismissed the claim because the Complaint failed to identify a clear and unambiguous promise by Michel, and, separately, because it did not plausibly allege that any defendant was an alter ego of Michel. Id. at *6-7. In moving for reconsideration, MCGM argues that Michel successfully "asked the shareholders" to approve issuing additional shares but did not adhere to the shareholder vote. (Pl. Mem. at 9.) This does not identify a promise by Michel and also does not go to the plausibility of any defendant's status as a purported alter ego of Michel.

In dismissing the "conveyance without consideration" claim asserted in Count Three, the Court generously construed it as an attempt to seek relief under the New York Debtor and Creditor Law, but concluded that the Complaint made no allegations about the involvement of the defendants, and noted the assertion in MCGM's memorandum that non-party SKW is liable for damages on this claim. 2024 WL 1250629, at *7-8. In moving for reconsideration, MCGM does little more than quote from statute and assert that SKW shareholders received "fraudulent" and "unreasonably small value" in the transaction with a Speyside entity. (Pl. Mem. 10.) For the reasons explained in the Opinion, this does not plausibly state a claim for relief.

Regarding its conversion claim, MCGM urges that even if shares were transferred from SKW to OPTA Group LLC pursuant to the insolvency plan ordered by the German courts,

---

[1] Five defendants named in the Complaint included "Speyside" in their name. The body of the Complaint often made no attempt to distinguish between and among Speyside entities.

\- 8 -

its conversion claim should be actionable because it sounds in fraud.[2] But the conversion claim does not reference fraud and does not allege fraud with the particularity required of Rule 9(b), Fed. R. Civ. P.

MCGM cites to New York authority on the law of replevin, but the Complaint brought no claim for replevin.

The motion for reconsideration will be denied.

CONCLUSION.

The motion for reconsideration is DENIED and the Clerk is respectfully directed to terminate the motion. (ECF 107.) The Clerk is also directed to terminate the gaveled motions at ECF 108, 110, 111 and 112, which are plaintiff's memoranda of law and attorney declarations that were erroneously filed as motions.

SO ORDERED.

_P. Kevin Castel_
P. Kevin Castel
United States District Judge

Dated: New York, New York
       June 18, 2024

---

[2] The insolvency plan provided for the uncompensated compulsory transfer of shares to an entity called Speyside S.a.r.l., which the Insolvency Division described as the only investor capable of continuing business operations and satisfying SKW's creditors. (See ECF 65-1 at 14.) The Complaint makes no mention of Speyside S.a.r.l. and alleges that OPTA Group LLC is the successor to SKW. (Compl't ¶¶ 40-42.)